IN THE MATTER OF THE ESTATE OF
HENRY D. MOORE, DECEASED.

Superior Court of New Jersey
Appellate Division

Argued February 28, 1966—Decided June 3, 1966.

Before Judges SULLIVAN, KOLOVSKY and GOLDMANN.

*Mr. Robert F. Garrett, III,* argued the cause for defendants-appellants.

*Mr. Charles A. McGeary* argued the cause for plaintiffs-respondents (*Mr. Frank S. Norcross,* attorney; *Messrs. Bleakly, Stockwell & Zink,* of counsel).

*Mr. George H. Hohweiler* argued the cause for Unborn and Unknown Persons and all minors who are beneficiaries of a Trust established by Henry D. Moore (*Mr. Samuel P. Orlando,* attorney).

The opinion of the court was delivered by

SULLIVAN, S. J. A. D. This is an appeal from a judgment of the Camden County Court (Probate Division) approving the fourth intermediate account of trustees and allowing certain *corpus* commissions and counsel fees. However, the only part of the judgment which is actually challenged is the allowance of $68,000 in *corpus* commissions on this accounting to the trustees.

The trust in question is *inter vivos,* was created in 1918, and is for the benefit of the four children of the settlor's deceased son Gilbert. The trust terminates upon the death of the last survivor of the four children, three of whom are still alive. The surviving trustees are the Camden Trust Company and Gilbert H. Moore, who is also one of the aforesaid children. The deed of trust is silent as to the compensation to be paid to the trustees.

There have been three previous intermediate accounts. The first covered the period from the inception of the trust through 1942; the second ran through 1949, and the third

through 1958. The present accounting runs from September 9, 1958 to July 6, 1964, a period of approximately six years. Including the period covered by the present accounting, the trust has extended over a period of 46 years.

Upon the filing of the present account exceptions to the $68,170.36 in *corpus* commissions requested were filed by the children of the deceased child. The trial court, after hearing argument in the matter, overruled the exceptions and allowed commissions of $68,000.

The agreed statement in lieu of record on this appeal includes the following table as a summary of the pertinent facts taken from the four accounts.

| Accounting | | Value | | *Corpus* | |
|---|---|---|---|---|---|
| Trust | Year | Book | Market | Receipts | Commission |
| Created | 1918 | $511,770 | $511,770 | | |
| 1 | 1942 | 579,972 | 585,679 | $282,523.01 | $21,562.38 |
| 2 | 1949 | 534,527 | 727,764 | 5,721.84 | 21,848.48 |
| 3 | 1958 | 508,014 | 939,059 | 6,171.31 | 35,812.74 |
| 4 | 1964 | 465,586 | 1,181,361 | 14,119.14 | 68,000.00 |

As noted in the table, the trustees on their first accounting, which covered approximately a 25-year period, were allowed *corpus* commissions of $21,562.38. This allowance comes to 2½% of $862,495.33, the amount of *corpus* receipts which accountants say came into their hands during the accounting period. The aforesaid figure of $862,495.33 is used as a base for calculating commissions on all subsequent accountings. It is the use of this base (which exceptants assert is overstated by some $68,000 if the figures in the table are correct) that has generated one of the exceptions herein.

In their second intermediate accounting, which ran from 1942 through 1949, the *corpus* commissions requested by the trustees and allowed did not take into consideration any commissions due after the initial 25-year accounting period. Instead, commissions were calculated and allowed as follows. (The tabulations are taken from the appendix and contain minor errors.)

Net *corpus* as shown by first intermediate account allowed by Camden County Orphans' Court on December 18, 1942 .................................. ........... .... $862,495.33
Plus receipts in present account . ........ . 5,721.84

868,217.27
Rate of Commission . . .. . ..... . . ... 5%

Commissions ............. .. .. ......... $ 43,410.86
Less commissions allowed in first intermediate account.. 21,562.38

Commissions requested and allowed .. .. .. $ 21,848.48

On the third intermediate accounting, which ran from 1950 through 1958, *corpus* commissions were calculated and allowed as follows:

Net *Corpus* as shown by first intermediate account allowed by Camden County Orphans' Court on December 18, 1942 .... . ... . ... . ...... .. . $862,495.33
*Corpus* receipts in second intermediate account allowed by Camden County Court, Probate Division, on April 21, 1950 . ... ....... .. . ... .. . ..... ... 5,721.84
Plus receipts in present account .. ... . ..... . 6,171.31

Total *corpus* receipts .. . . ...... . $874,388.48
Trust began 5/10/18
Trust has run 40 years, 5 months
(This account stated as of 10/17/58)
5% on $874,388.48 for 25 year period .. .. ..... ... $ 43,719.42
Additional commission after 5/10/43 on basis of 1/5 of 1% per year 3% on $874,388.48 period from May 1943 to May, 1958—15 years @ 1/5 of 1% ...... ....... 26,231.65
5/12 of 1/5 of 1% for period May, 1958 to October, 1958 on $874,388.48 ........................ .......... . 728.65
1% on $874,388.48—co-fiduciary .. . ... . . .... .. 8,743.88

$ 79,423.60
Less:
Commissions allowed 1942 ......... .... $21,762.38
Commissions allowed 1950 ...... ....... 21,848.48 $ 43,610.86

Commissions requested and allowed .. . ..... .. .. $ 35,812.74

On the present intermediate accounting, which runs from September 9, 1958 to July 6, 1964, *corpus* commissions were calculated and allowed as follows:

Net *corpus* as shown by first trustees' account allowed
 by Camden County Orphans' Court 12/18/42 ....... $ 862,495.33
*Corpus receipts* second trustees' account allowed by
 Camden County Court, Probate Division 4/21/50 ... 5,721.84
*Corpus receipts* third trustees' account allowed by
 Camden County Court, Probate Division 9/25/59 ... 6,171.31
*Corpus* receipts *fourth* trustees' account ............. 14,119.14
*Appreciation* of assets as shown in fourth trustees'
 account as of 7/16/64 ......................... 715,774.66

 Receipts and Appreciation .................... $1,604,282.28

Trust began 5/10/18.
Trust has run 46 years.
5% on $1,604,282.28 for 25-year period .............. $ 80,214.11
4% on $1,604,282.28 for 20-year period ........... . 64,171.29
1/5 of 1% on $1,604,282.28 for one year ........... 3,208.56

 $147,593.96

Less: Commissions allowed by Court
 First Account
 1942 ................... $21,762.38
 Second Account
 1950 ..... . ............ 21,848.48
 Third Account
 1959 . .............. 35,812.74
 79,423.60

Commissions requested ........................... $ 68,170.36
Commissions allowed ............................ $ 68,000.00

In the main, exceptants charge that the trustees in calculating their commissions on the present accounting have (1) used maximum rates of commission which are excessive; (2) taken double commissions on at least $68,202 of *corpus;* (3) taken 46 years' commission on additions and accretions to *corpus;* (4) taken 46 years' commission on (a) *corpus* distributed to the beneficiaries many years ago, (b) *corpus* paid out as commissions on previous accountings, and (c) *corpus* disbursed over the years; and (5) taken the July 6, 1964 unrealized market value of the trust *corpus* and used it as a basis for computing 46 years' commissions at maximum rates.

We deal first with the contention that the base of $862,-495.33 used by the trustees on all of its accounting is over-

stated by $68,202. Using the stipulated table, exceptants argue that since the trustees received *corpus* assets of $511,-770 at the inception of the trust and during the period covered by the first accounting received additional *corpus* assets of $282,523.01, the total amount of *corpus* assets which came into the trustees' hands during that period (according to the table) is $794,293.01 rather than $862,495.33, a difference of $68,202.

The table itself does not furnish a definitive answer to the question. The figures therein are ambiguous. Reference to the first intermediate account does *not* provide a solution, since the account is in a form which would not be approved under our present practice and is not readily understandable. However, the "Decree allowing Account," dated December 18, 1942, indicates that the commissions of $21,-562.38 which were allowed the trustees were at the rate of $2\frac{1}{2}\%$. According to the decree therefore it is apparent that it was determined that the amount of *corpus* assets which came into the trustees' hands during the accounting period was $862,495.33. No exceptions were taken to this account, and the decree allowing such account is *res judicata*. Therefore, we conclude that exceptants have not shown that the accountants' 1942 base figure has been overstated by $68,202.

Exceptants also object to the use of the unrealized market value of *corpus* assets in calculating *corpus* commissions on an intermediate accounting. We disagree. It is not improper to give consideration to the unrealized market value of *corpus* assets in making commission allowances on an intermediate accounting. *In re Cox's Estate*, 21 *N. J. Super.* 287, 288–289 (*Chan. Div.* 1952) ; *In re Estate of Higgins*, 61 *N. J. Super.* 291, *passim* (*Cty. Ct.* 1960). In 1960 Governor Meyner filed, without signing, *Senate Bill No.* 211 which would have made it mandatory to compute a fiduciary's commissions on the true and reasonable value of the *corpus* as of the date of the close of the intermediate or final account. The statement of his reasons for not signing the bill, reprinted in 83 *N. J. L. J.* 156 (March 24, 1960), points out that, under

present law, commissions on a final accounting are to be calculated on the basis of inventory or market value, whichever is higher, and on intermediate accounts the court may look to current market values in fixing commissions. The sense of the veto message is that the fixing of commissions on an intermediate accounting depends on many variables which must be weighed in each case, so that the matter should properly be left to the sound discretion of the court rather than made mandatory in all cases. The message suggests that adjustment in the rate of commission would be a proper way to balance the variables presented in the particular case.

We next consider the method of computing commissions utilized by the trustees on the present accounting. The practice on each intermediate accounting of calculating *corpus* commissions on the total amount of *corpus* received during the entire trust administration and deducting therefrom the amount of commissions previously allowed finds support in 7 *N. J. Practice* (*Clapp, Wills and Administration*) (*3d ed.* 1962), § 1533, *p.* 234. However, where the trust administration runs beyond a 25-year period, this method of computation is better reserved for the final accounting, when the trust estate is wound up and the remaining assets distributed. At that time a final computation of *corpus* commissions can be made.

On an intermediate accounting beyond the 25-year period, absent special circumstances such as the death of a trustee, *In re Estate of Higgins, supra,* the trustees should be compensated on the basis of *corpus* assets which came into their hands during the particular period at a rate not in excess of one-fifth of 1% per year. This would appear to be the sense of *N. J. S.* 3A:10–2.

The present accounting is beyond the initial 25-year period and runs for approximately six years. Commissions on this accounting should be at a rate not in excess of one-fifth of 1% per year. The account shows that at the close thereof the trustees had in their hands *corpus* assets having a market value of $1,181,361.42. In addition, *corpus* dis-

bursements of $11,677.40 during the accounting period were made. (This latter figure appears in the account). No distribution of *corpus* was made. Therefore, using market value, the total amount of *corpus* administered during this period by the trustees is $1,193,038.82.

It is to be noted that under the statute commissions are allowable at rates "not exceeding" specified percentages. In fixing the rate to be actually allowed, consideration should be given to the intermediate nature of the accounting. Ordinarily, maximum rates are not allowed on intermediate accountings. Some percentage should be reserved to compensate for the final winding up of the trust estate. *In re Cox's Estate, supra,* 21 *N. J. Super.,* at *p.* 289. Use of unrealized market values is also a factor to be considered. These values can vary from day to day, and, unless and until, they have been realized, can recede as quickly as they have accrued. The size of the estate itself is another element which the courts have taken into consideration.

In all cases, the statute requires that the allowance shall be made with reference to the fiduciary's actual pains, trouble and risk raather than in respect to the *quantum* of the estate. See *N. J. S.* 3A:10–1, 3A:10–4. Subject to the foregoing, the allowance of commissions, including the fixing of the rate thereof, is a matter for the sound discretion of the probate judge.

On the termination of the trust, when the final accounting is had and distribution of the balance of the trust estate ordered, and a final computation of commissions made, the allowance shall take into consideration the duties and responsibilities entailed in the winding-up process.

While we are not called upon to consider a computation of final *corpus* commissions at this time, we deem it appropriate to set out certain guidelines for such computation.

It is undisputed that the trustees herein have received or realized additional *corpus* assets since the inception of the trust. Also, they have distributed to the beneficiaries and disbursed substantial portions of the trust estate during its ad-

ministration. No good reason appears why the trustees should be entitled to commissions on these assets as if they had been administered for the entire trust period. *Tucker v. Tucker,* 33 *N. J. Eq.* 235 (*Prerog.* 1880), affirmed on opinion 34 *N. J. Eq.* 292 (*E. & A.* 1881), and *Wilson v. Staats,* 33 *N. J. Eq.* 524 (*Prerog.* 1881), are not to the contrary. The commission statute then in effect did not provide for additional compensation beyond the initial 25-year period.

 We also consider that it would be an unwarranted inflation of the base for commissions herein to take market value and relate it back to the inception of the trust in 1918 by computing commissions thereon over the entire trust period. As shown by the stipulated table, the appreciation in market value of *corpus* assets over book value for the first 25 years is nominal. It is only in the latter years of the trust administration that any substantial increase in market value over book value is shown.

 A proper computation of final *corpus* commissions in line with the statutory provision would be as follows:

(1) For the first 25 years of the trust administration commissions would be allowable on all *corpus* assets which were administered during that period at a rate not in excess of 5%. The trustees are not entitled to an additional 1% commission for this period, which closed May 10, 1943. The statutory provision allowing an additional 1% for each additional trustee where there are two or more trustees was not enacted until 1957. *Cf. National State Bank of Newark v. Nadeau,* 57 *N. J. Super.* 53, 69 (*App. Div.* 1959).

(2) Beyond the 25-year period commissions would be allowable on all *corpus* assets which were administered during each accounting period at a rate not exceeding one-fifth of 1% for each year covered by the particular accounting.

(3) From the total *corpus* commissions so computed deduction should be made of the commissions previously allowed and the trustees awarded any balance of commissions shown to be due.

 Since, as heretofore noted, the allowance of commissions, including the fixing of the rate thereof, is in the first instance the prerogative of the probate court, and since the parties to this proceeding have not had the opportunity to present their views as to the rates of commission to be applied under the method of computation outlined herein, we conclude that we should not fix the amount of commissions to be allowed.

That portion of the judgment on the fourth intermediate account which allowed *corpus* commissions of $68,000 is vacated, and the matter remanded to the Camden County Court, Probate Division, to make a new allowance of *corpus* commissions in conformity with this opinion. All interested parties should be given an opportunity to be heard and present their views as to such allowance, including the rate of commission to be used. We do not retain jurisdiction. Allowances on this appeal shall be considered on formal application.